## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| KEVIN B. FROST, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Docket No. 2:23-cv-00198-NT |
| | ) |
| FEDERAL NATIONAL | ) |
| MORTGAGE ASSOCIATION and | ) |
| BROCK & SCOTT, PLLC, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

Before me are the motion to dismiss filed by Defendant Federal National Mortgage Association ("**Fannie Mae**") (ECF No. 7) and the motion to dismiss filed by Defendant Brock & Scott, PLLC ("**B&S**") (ECF No. 5) for failure to state a claim upon which relief can be granted. For the reasons stated below, I **GRANT** B&S's motion, but I conclude that abstention is appropriate for the claims brought against Fannie Mae and therefore **DENY** Fannie Mae's motion and **STAY** the case.

## BACKGROUND

This is Plaintiff Kevin B. Frost's second case before me. Because this matter, like the prior case, involves the Defendants' attempts to collect on the mortgage on Frost's property in South Paris, Maine, I do not repeat the full story here. A comprehensive background on the history of the mortgage and collection attempts through March 25, 2021 can be found in my order dismissing Frost's 2021 action. *See Frost v. Castle Point Mortg., Inc., et al.*, No. 2:21-cv-00112-NT ("*Frost I*") (ECF No.

21) (D. Me. Oct. 25, 2021), *available at* 2021 WL 4952506. Suffice it to say that Frost's first lawsuit sought: (1) a declaration that certain assignments in the chain of the mortgage were invalid and therefore he held title to the South Paris property unencumbered by the Mortgage; and (2) an order enjoining Fannie Mae and others from asserting any interest in the property that was adverse to him, including enforcement of the mortgage and underlying note. *See Frost I* Compl. (ECF No. 1-1).

On April 14, 2023, Frost brought this current action seeking declaratory and injunctive relief. As before, Frost filed his Complaint in state court, but Fannie Mae (with B&S's consent) removed the case to this Court.[1] Compl. (ECF No. 4-3); Notice of Removal (ECF No. 1). Frost names both Fannie Mae and B&S as defendants. Compl. ¶ 7. As to Fannie Mae, he asks the court "to scrutinize the conveyance of real estate" and he "contest[s] the overall legality of the obtaining and the recording of a quitclaim assignment obtained and recorded by the Federal National Mortgage Association" and seeks equitable relief. Compl. 1–2. Frost asks that I "deem the quitclaim assignment defective" and/or issue a ruling to preserve his right "to raise these issues in any future court litigation including but not limited to foreclosure and/or any debt collection attempts." Compl. 13. His allegations against B&S relate to the debt collection activities that B&S took against Frost relating to the South Paris mortgage and underlying debt. *See* Compl. ¶¶ 26, 30, 35, 45–47, 64–68.

---

[1]     I have jurisdiction over the action because there is complete diversity of citizenship between Frost and all Defendants and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a)(1). On May 18, 2023, Frost moved to remand to state court (ECF No. 10), but later withdrew his motion (ECF No. 16).

Fannie Mae and B&S separately moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. The parties' briefing on the motions to dismiss reveals that on March 7, 2023, Fannie Mae, with B&S serving as Fannie Mae's counsel, filed a foreclosure action against Frost in state court. Mot. to Dismiss as to Brock & Scott, PLLC ("**B&S Mot.**") at 3; Pl.'s Opp'n to Fed. Nat'l Mortg. Ass'n's Mot. to Dismiss at 2 (ECF No. 14); Def. Fed. Nat'l Mortg. Ass'n's Reply Mem. of Law in Further Supp. of its Mot. to Dismiss Pl.'s Compl. at 2 (ECF No. 17); *see also* Ex. A to B&S Mot. (ECF No. 5-1).

On October 17, 2023, I invited supplemental briefing on an issue that had not been addressed by the parties—whether, given the foreclosure action that has been initiated by Fannie Mae against Frost in state court, I should abstain under the doctrine first set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). *See Jiménez v. Rodríguez–Pagán*, 597 F.3d 18, 27 n.4 (1st Cir. 2010) (appropriate to raise *Colorado River* abstention *sua sponte*). B&S filed a supplemental brief, maintaining that the *Colorado River* doctrine does not apply to the claims against B&S and pointing out that Frost "had already agreed" that B&S should be dismissed from this action. Suppl. Br. in Supp. of Mot. to Dismiss as to Brock & Scott, PPLC at 2 (ECF No. 19). Fannie Mae also filed a supplemental brief. In it, Fannie Mae confirms that, by the time Frost had filed this action on April 14, 2023, Fannie Mae "had already filed its Foreclosure Action with the South Paris District Court by Complaint dated March 7, 2023." Def. Fed. Nat'l Mortg. Ass'n's Suppl. Br. in Further Supp. of its Mot. to Dismiss Pl.'s Compl. ("**Fannie Mae's**

**Suppl. Br.**") at 2 (ECF No. 20). Fannie Mae argues that there is "no doubt at all" that the state foreclosure action would resolve all of the claims in this federal case, and therefore abstention under *Colorado River* is appropriate. Fannie Mae's Suppl. Br. 2. Frost filed a response to the Defendants' supplemental memoranda. Pl.'s Resp. to Def.'s Fed. Nat'l Mortgage Ass'n and Brock & Scott PPLC's Suppl. Brs. ("**Pl.'s Suppl. Resp.**") (ECF No. 21). Frost opposes abstention, arguing that at the time he filed this action the Defendants' foreclosure action "was sitting dormant and inactive on the shelf" and that the "two cases are not the same" and the argument he is pursuing "about the legality of the quitclaim assignment is in jeopardy." Pl.'s Suppl. Resp. at 1–2. Alternatively, he asks that if I abstain, I remand his case back to the state court or if I dismiss, that the dismissal be without prejudice. Pl.'s Suppl. Resp. at 4–5.

## DISCUSSION

### I.   Plaintiff's Claims Against Brock & Scott, PLLC

Defendant B&S is correct that Frost has already stated that he was "willing to accept dismissal as to Brock & Scott only." *See* Pl.'s Opp'n to Mot. to Dismiss with Prejudice as to Brock & Scott PLLC at 1 (ECF No. 6). In his supplemental response, Frost clarifies that his "agreeable statements about dismissing Brock & Scott were contingent on the fact that Brock & Scott were not pursuing this debt as owners of this debt but rather solely as agents for Fannie Mae." Pl.'s Suppl. Resp. at 4. The record before me, including Exhibit G attached to Frost's complaint, shows that B&S was acting as an agent for Fannie Mae, not as the owner of the mortgaged debt. *See, e.g.*, Compl. Ex. G. (ECF No. 4-10) ("Brock & Scott, PLLC is a debt collector. We are

4

trying to collect a debt that is owed to Federal National Mortgage Association.").[2] Given this fact and Frost's concession, I am dismissing B&S from this action.

## II.    Plaintiff's Claims Against Fannie Mae

As to Frost's claims against Fannie Mae, Fannie Mae moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim. Fannie Mae argues that the Plaintiff's theory—that the note and Mortgage should be invalidated because the initial assignment from Mortgage Electronic Registration Systems is ineffective under *Bank of America v. Greenleaf*, 2014 ME 89, 96 A.3d 700, and the original lender, Castle Point, has forfeited its corporate status—fails as a matter of law. Mem. of Law in Supp. of the Mot. to Dismiss Pl.'s Compl. by Def. Nat'l Mortg. Ass'n at 3, 5–6 (ECF No. 7-1). Even though Fannie Mae did not initially raise the abstention issue, it now takes the position that *Colorado River* abstention is warranted.

The *Colorado River* abstention doctrine "rest[s] on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River*, 424 U.S. at 817 (internal quotations omitted). Accordingly, this abstention doctrine "allows federal courts in limited instances to stay or dismiss proceedings that overlap with concurrent litigation in state court." *Jiménez*, 597 F.3d at 21 (citing *Colo. River*, 424 U.S. 800). The cases that merit *Colorado River* abstention are rare, however, because "[o]f all

---

[2]    In reviewing a motion to dismiss for failure to state a claim, I "can consider (a) implications from documents attached to or fairly incorporated into the complaint, (b) facts susceptible to judicial notice, and (c) concessions in plaintiff's response to the motion to dismiss." *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55–56 (1st Cir. 2012) (internal quotations and footnote omitted).

the abstention doctrines, it is to be approached with the most caution, with 'only the clearest of justifications' warranting dismissal." *Id.* at 27 (quoting *Colo. River,* 424 U.S. at 819).

The First Circuit has developed an "exceptional-circumstances test" to determine if such a clear justification exists for a given case. *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 16 (1983)). Where a parallel state proceeding is pending, the relevant factors that a federal court may consider in deciding whether to abstain, include, but are not limited to:

> (1) whether either court has assumed jurisdiction over a res; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

*Jiménez*, 597 F.3d at 27–28. "No one factor is necessarily determinative." *Colo. River,* 424 U.S. at 818. " '[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction.' " *Jiménez*, 597 F.3d at 28 (quoting *Moses H. Cone,* 460 U.S. at 16).

## A.   Existence of a Parallel State Proceeding

A threshold question before engaging with the list of factors is whether the state foreclosure action is in fact a "parallel state court action" that *could* trigger *Colorado River* abstention. *Advantage Payroll Servs., Inc. v. Rode*, No. 2:21-cv-00020-NT, 2021 WL 5999187, at *4 (D. Me. Dec. 20, 2021) (quoting *Ambrose v. New Eng.*

*Ass'n of Schs. & Colls., Inc.*, 100 F. Supp. 2d 48, 49 (D. Me. 2000)). " 'While the two suits need not have a perfect identity of parties and issues' to be parallel, they must have 'substantially the same parties litigating substantially the same issues in different forums.' " *Id.* (quoting *Ambrose*, 100 F. Supp. 2d at 50). Here, the state court foreclosure action involves both Frost and Fannie Mae, and the allegations that Frost raises in this lawsuit contesting the validity of a quitclaim assignment in the chain of his mortgage rests on the same "factual predicate[ ]" and "legal theories" as the foreclosure action. *See Ambrose*, 100 F. Supp. 2d at 50. To succeed on its foreclosure action, Fannie Mae will (as Frost points out) have to prove its standing as the current holder of the note and mortgage under *Greenleaf*. Frost's claims here go to that same question and would be defenses in the foreclosure case so the same evidence and witnesses are implicated. Accordingly, I find that the pending foreclosure proceeding is a parallel state court action.

### B.    Applying the *Colorado River* Factors

The first factor—whether either the state or federal court has assumed jurisdiction over a res[3]—is based on a prudential concern for deferring to another court for the sake of " 'comprehensive disposition of rights in a particular piece of property.' " *Jiménez*, 597 F.3d at 28 n.6 (citation omitted). Frost's federal complaint for declaratory and equitable relief boils down to the question of whether, by virtue of the Frost-disputed quitclaim assignment to Fannie Mae, Fannie Mae has any right

---

[3]    "Res" is Latin for "thing." Black's Law Dictionary (11th ed. 2019). "[W]hen property is the main subject of a lawsuit, a court's exercise of jurisdiction over the property in that lawsuit may be termed 'in rem' jurisdiction, and the property at issue may be termed the 'res.' " *Sexton v. NDEX W., LLC*, 713 F.3d 533, 536 n.4 (9th Cir. 2013).

to foreclose and obtain the title to the same South Paris property that is the subject of the state foreclosure proceeding. Both the state foreclosure action and this action are in rem proceedings that ultimately involve the same property.[4] *See KeyBank Nat'l Ass'n v. Keniston*, 2023 ME 38, ¶ 16, 298 A.3d 800 ("A foreclosure action is in rem in nature . . . ."); *In re Bateman*, 397 F. Supp. 3d 113, 122 (D. Mass. 2019) ("Maine's generally applicable quiet title statute is 'a proceeding *in rem* against the land.' " (quoting 14 M.R.S. § 6657)). If my analysis of the quitclaim assignment to Fannie Mae differs from that of the state court hearing the foreclosure matter, "[t]here is . . . a possibility for inconsistent dispositions of property." *Jiménez*, 597 F.3d at 28. Therefore, this factor favors abstention.

The third factor—the desirability of avoiding piecemeal litigation—similarly weighs in favor of abstention. "The 'piecemeal litigation' to be avoided is something more than just the repetitive adjudication that takes place in all cases implicating [the] *Colorado River* doctrine." *Jiménez*, 597 F.3d at 29. "[A] duplication of effort, while wasteful, is not exceptional," *id.*, so the piecemeal-litigation concern "should focus on the implications and practical effects of litigating suits deriving from the same transaction in two separate fora, not on the mere possibility of duplication." *Gonzalez v. Cruz*, 926 F.2d 1, 4 (1st Cir. 1991). The potential "for harmful inconsistent determinations" in the state and federal courts is one such implication. *Id.* Here, that

---

[4]        In Latin, "in rem" means "against a thing" and in legal use means "involving or determining the status of a thing, and therefore the rights of persons generally with respect to that thing." Black's Law Dictionary. " 'An action *in rem* is one in which the judgment of the court determines the title to property and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property upon which the court had adjudicated.' " Black's Law Dictionary (quoting R.H. Graveson, *Conflict of Laws* 98 (7th ed. 1974)).

possibility looms large and the danger of unfairness to the parties is real. For example, if I hypothetically found on the limited facts before me that the quitclaim assignment to Fannie Mae is valid, that could lead Fannie Mae to seek to preclude Frost from challenging the assignment in the foreclosure proceeding on res judicata grounds. Or the state court judge might reach a different conclusion about the assignment and whether it gives Fannie Mae standing to foreclose. In addition, the First Circuit has "found that a risk of piecemeal litigation arises when 'a ruling from the state court would render [the federal court's] opinion merely advisory.' " *United States v. Fairway Cap. Corp.*, 483 F.3d 34, 42 (1st Cir. 2007) (quoting *Rivera-Feliciano v. Acevedo-Vilá*, 438 F.3d 50, 62 (1st Cir. 2006)). That risk is present here where Frost seeks "scrutiny" from me about Fannie Mae's right to enforce Frost's mortgage in the foreclosure action. *See* Fannie Mae's Mot. to Dismiss 6–7.[5] All these reasons suggest that this case is one of the exceptional ones where the piecemeal litigation concern is well-founded.

The remaining factors are either neutral or slightly favor abstention. The second factor, the geographical inconvenience of the federal forum, carries little-to-no weight because the South Paris District Court in Oxford County and the federal court in Portland, which are about a one-hour drive apart, are equally convenient. *See Burns v. Watler*, 931 F.2d 140, 147 (1st Cir. 1991) ("[A] two-hour drive does not denote

---

[5]     B&S also maintains that "[t]he propriety of the quit claim assignment of mortgage itself is a question of law to be determined at trial in the Foreclosure Action" and that that court "should address all of Frost's claims in the Foreclosure Action." B&S Mot. to Dismiss 5–6, 7.

a degree of inconvenience that should significantly influence the question of whether the proceedings in the federal court should be stayed.").

As to the fourth factor, I should "favor[ ] the case that is the more advanced at the time the *Colorado River* balancing is being done." *Jiménez*, 597 F.3d at 30–31 (internal quotations omitted). According to the clerk's certificate of foreclosure that was recorded in the Oxford County Registry of Deeds, the state court obtained jurisdiction first because the foreclosure action was filed on March 7, 2023, and Frost did not file the instant action until April 14, 2023. *See* B&S Mot. to Dismiss Ex. A (ECF No. 5-1); Compl. Although Frost's characterization of Fannie Mae's foreclosure filing as "sitting on the shelf" suggests that the state action has not advanced significantly, it is likely more developed than the case before me where, due to their pending motions to dismiss, neither defendant has yet filed an answer. *See Colo. River*, 424 U.S. at 820 (finding that the absence of any federal proceedings beyond a motion to dismiss favors the surrender of jurisdiction).

Turning to the next factors, state law controls (fifth factor) and, to the extent it is relevant, the state forum is adequate to protect the parties' interests (sixth factor). *See United States v. Fairway Cap. Corp.*, 483 F.3d 34, 43 (1st Cir. 2007) (noting that this factor is important "only when it disfavors abstention" and concluding it was neutral because "the possibility that the state court proceeding might adequately protect the interests of the parties is not enough to justify the district court's deference to the state action" (internal quotations omitted)). I view

these factors as neutral. As to the seventh factor, that too is neutral because there is no evidence that the proceeding Frost initiated was vexatious or contrived.[6]

In considering all these factors, I have "heavily weighted" the balance "in favor of the exercise of jurisdiction." *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 13 (quoting *Moses H. Cone*, 460 U.S. at 16). While none of the factors favor the federal forum and most are neutral, the first and third factors and the exceptional circumstances of this case present a clear justification for abstention because the ownership interest in a res—Frost's mortgaged property—is at issue and my involvement in the case would result in piecemeal litigation and could result in potentially harmful conflicting rulings in the federal case and the state foreclosure action.[7] Although *Colorado River* abstention "is to be used sparingly and approached with great caution," it is appropriate in exceptional circumstances. *Nazario–Lugo v. Caribevisión Holdings, Inc.*, 670 F.3d 109, 115 (1st Cir. 2012). This is one of those cases.

---

[6]    The eighth factor—respect for the principles underlying removal jurisdiction—is not relevant here because Frost expressed his wish to have his case proceed in state court by filing it there and by initially seeking remand after removal. *See United States v. Fairway Cap. Corp.*, 483 F.3d 34, 44 (1st Cir. 2007) (explaining that this factor is relevant "if a plaintiff was attempting to evade the policy in 28 U.S.C. § 1441 that only a defendant be able to remove a lawsuit from state court to federal court").

[7]    One additional consideration peculiar to my analysis here is the availability of the Maine Foreclosure Diversion Program. At some point in the foreclosure action, the parties will likely engage in free State-provided mediation, and I am concerned that any decision I might make here could have a deleterious effect on the parties' efforts to reach a resolution. Indeed, Frost's supplemental response suggests that said mediation is occurring. *See* Pl.'s Suppl. Resp. at 2 (stating that the "foreclosure action is in effect on a stay pending mediation").

## III.  Next Steps

Having found that *Colorado River* abstention is proper, I must now determine whether the appropriate disposition is a dismissal or a stay of the federal proceedings.[8] The First Circuit seemingly favors a stay because "it may likely produce the same result as a dismissal while still leaving the docket open in case loose ends remain at the conclusion of the state proceedings." *Jiménez*, 597 F.3d at 31. That said, "the decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case, whether it stays or dismisses." *Moses H. Cone*, 460 U.S. at 28. Given the First Circuit's preference, I opt to stay the federal action but with the "[t]he expectation . . . that the controversy will be resolved in the state court proceeding, and that if the part[ies] return[ ] to federal court after the state court action is over, the most that will be needed is to dispose of the federal suit on principles of res judicata or collateral estoppel." 17A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4247 (3d ed. 2007).

---

[8]      The Plaintiff urges that I follow a third option and remand the case to state court, but "[t]he Court has no power to remand under *Colorado River,* which allows courts to stay or dismiss certain actions in exceptional circumstances." *Ambrose v. New Eng. Ass'n of Schs. & Colls., Inc.*, 100 F. Supp. 2d 48, 49 n.1 (D. Me. 2000), *aff'd,* 252 F.3d 488 (1st Cir. 2001). As the Fifth Circuit has explained:

> It is clear . . . that remand is not an option. In addition to being unsupported by any authority in the removal statute or elsewhere, it is simply illogical. Where a court has already determined under the *Colorado River* analysis that an existing state court case "will be an adequate vehicle for the complete and prompt resolution of the issues between the parties," *Moses H. Cone,* 460 U.S. at 28, 103 S. Ct. 927, no purpose is served by sending the federal case back to state court to litigate the same issues.

*Saucier v. Aviva Life & Annuity Co.*, 701 F.3d 458, 465–66 (5th Cir. 2012). Here, the existing state foreclosure action is an adequate vehicle to resolve the mortgage-related issues raised by Frost in his Complaint. Nothing in my orders entered here in federal court is meant to preclude him from raising his concerns as affirmative defenses or counterclaims in the state court action.

## CONCLUSION

For the reasons stated above, Brock & Scott, PPLC's motion to dismiss is **GRANTED** and Brock & Scott, PLLC is **DISMISSED** without prejudice. The remaining case against Defendant Federal National Mortgage Association is **STAYED**, and Defendant Federal National Mortgage Association is directed to file a status report on the progress of the foreclosure action on January 5, 2024, and every sixty days thereafter.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 30th day of November, 2023.